In the Matter of RICHARD D. de RHAM, as Treasurer of Scenic Hudson Preservation Conference, et al., Respondents, *v.* HENRY L. DIAMOND, as State Commissioner of Environmental Conservation, Appellant, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Intervenors-Appellants.

Third Department, June 29, 1972.

*Louis J. Lefkowitz, Attorney-General* (*Julius Feinstein, Ruth Kesser Toch, Stanley Fishman* and *Joseph F. Gibbons* of counsel), for appellant.

*LeBoeuf, Lamb, Leiby & MacRae* (*Carl D. Hobelman* and *G. S. Peter Bergen* of counsel), for Consolidated Edison Company of New York, Inc., intervenor-appellant.

*Rider, Weiner & Loeb* for Town of Cornwall, intervenor-appellant.

*Berle & Butzel* (*Albert K. Butzel, Peter A. A. Berle* and *David Sive* of counsel), for Richard D. de Rham and others, respondents.

*Winer Neuburger & Sive* (*David Sive* of counsel), for Sierra Club and its Atlantic Chapter, respondent.

*Spear & Hill* (*John M. Burns, III,* of counsel), for Hudson River Fishermen's Association, Inc., respondent.

*J. Lee Rankin, Corporation Counsel* (*Peter C. Demetri, Evelyn J. Junge* and *Ira H. Zukerman* of counsel), for City of New York, respondent.

HERLIHY, P. J.   On August 19, 1970 the Consolidated Edison Co. of New York, Inc. was issued a license by the Federal Power Commission to construct and operate a pumped storage hydroelectric facility near Cornwall, New York.   This facility will operate by pumping water from the Hudson River by means of combination electric motors-generators at time of the day when electric demands are low and storing such water in reservoirs for release back to the Hudson River through the said combination motors-generators to promptly supply additional electrical energy during peak usage times in the New York City area.   At the site of the facility there will be no direct consumption of any type of fuel for the purpose of generating the necessary electricity.   However, inasmuch as the pumping operation consumes electrical energy other electrical facilities throughout the State will be supplying whatever energy supplies are necessary to provide that electrical energy.

In connection with the Federal Water Pollution Control Act (U. S. Code, tit. 33, § 1171, subd. [b]), subdivision (b) of section 21 provides that this licensee: '' shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate, or, if appropriate, from the interstate water pollution control agency having jurisdiction over the navigable waters at the point where the discharge originates or will originate, that there is reasonable assurance, as determined by the State or interstate agency that such activity will be conducted in a manner which will not violate applicable water quality standards.'' *

Pursuant to the limitation on the Federal licensing agency contained in the quoted portions of said subdivision (b) of section 21 and as authorized by the Environmental Conservation Law (§ 15) the appellant Commissioner entertained an application by the licensee for a certificate that there was '' reasonable assurance '' that the proposed facility would not violate the applicable New York State Water Quality Standards as are particularized in 6 NYCRR 858.4 and 6 NYCRR 701.3 pursuant to sections 1205 and 1210 of the Public Health Law.

---

* The section also provides: " If the State, interstate agency or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application. No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence. No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be."

In connection with the application, the Commissioner held public hearings and thereafter issued a certificate of assurance subject to several conditions which are designed to protect the State against certain possible and perhaps probable effects of the project as developed in the record before the hearing officer but which were not then demonstrated to be clearly harmful.

It is certain from a review of the hearing officer's report and recommendations and the conditions imposed by the Commissioner that due consideration was given to all factors which would directly affect all aspects of water quality in the immediate vicinity of the project and indirectly affect water quality at other places on the Hudson River and in the State of New York. It was duly noted that there would be some deleterious effects, but it was determined that such effects either were insignificant or that as a matter of theory as opposed to what might occur upon actual operation were not of such a nature as to probably cause lasting effects.

The petitioners have not demonstrated that the conditions imposed will not reasonably safeguard the State in the event that actual operations do cause violations of water quality of a significant nature. A review of the hearing officer's report demonstrates that the certificate was issued upon a *reasonable* basis and to require more than a reasonable basis is not necessary as a matter of law or practicality. It is to be noted that the issuance of the Federal license had been preceded by some eight years of proceedings before the Federal Power Commission and the Federal courts. The opposition to this project has certainly had ample opportunity to demonstrate any and all probable harmful effects of the licensee's project and yet in the hearings held in regard to this certificate there was no clear demonstration of any significant harmful effect upon the water quality within the State of New York. While the burden of reasonable assurance may rest with the licensee, it would be expected that the opposition would likewise be able to show the extent and strong probability of significant deleterious effects upon water quality resulting from the project.

In regard to New York City's contention that the implementation of the project may cause physical damage to " The Catskill Aqueduct ", such a consideration has no bearing on water quality and if such damage does result, it is a matter of concern between the licensee and the city and the certificate issued by the appellant Commissioner is obviously not a permission by the State to cause physical injury to another's property. (Cf. *Van Buskirk* v. *State of New York*, 38 A D 2d 349.) It should be noted that

the Federal Power Commission concluded from the evidence
'' that the probability of damage to the Aqueduct is remote ''.
There are many instances of tunneling in the City of New York
and elsewhere that would appear to justify such reliance.

The Commissioner in this proceeding is concerned with the
water quality on behalf of all of the people of the State.

Order and judgment should be modified by denying and dis-
missing the petition in its entirety, and as so modified, affirmed,
without costs.

SWEENEY, KANE and REYNOLDS, JJ., concur; STALEY, JR., J.,
not voting.

Order and judgment modified, on the law and the facts, by
denying and dismissing the petition in its entirety, and, as so
modified, affirmed, without costs. Settle order on notice.